UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| TRACEY PATTERSON; BRANDY RECORD, | ) |
| | ) |
| Plaintiffs, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| BAYER CORPORATION, BAYER | ) |
| HEALTHCARE LLC, BAYER ESSURE INC. | ) **JURY TRIAL DEMANDED** |
| (F/K/A/ CONCEPTUS, INC.), BAYER | ) |
| HEALTHCARE PHARMACEUTICALS INC., | ) |
| APPALACHIAN REGIONAL | ) |
| HEALTHCARE, INC. d/b/a HAZARD ARH | ) |
| REGIONAL MEDICAL CENTER, and | ) |
| JAMES DELMAR DAWSON, JR., M.D., | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF REMOVAL

Defendants Bayer Corporation, Bayer HealthCare LLC, Bayer Essure Inc., and Bayer HealthCare Pharmaceuticals Inc. ("Bayer"), by and through its undersigned counsel, hereby provide notice pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446 of the removal of the above-captioned case from the Perry County Circuit Court for the Commonwealth of Kentucky to the United States District Court for the Eastern District of Kentucky, London Division. The grounds for removal are as follows:

1. On or about January 31, 2017, two unrelated Plaintiffs filed a Complaint in Kentucky state court in this civil action. The Complaint alleges that Plaintiffs suffered various distinct injuries, three years apart, as a result of their individual experiences using Essure, an FDA-approved Class III medical device that serves as a form of permanent female birth control. *See* Ex. A (Complaint).

2. Essure was approved by FDA through the rigorous premarket approval ("PMA") process in 2002. *See, e.g.*, Ex. B (Premarket Approval Order). Since then, FDA has repeatedly reviewed and approved Essure's design, construction, manufacturing, testing, training requirements, warnings, instructions for use, patient information, and all other labeling. *See, e.g.*, Ex. C (PMA Supplements). Indeed, FDA has reiterated—after an extensive investigation regarding Essure and its labeling—that the agency "believes Essure remains an appropriate option for the majority of women seeking a permanent form of birth control." *See, e.g.*, Ex. D (FDA News Release (Feb. 29, 2016)).

3. As set forth more fully below, this case is properly removed. First, this Court has federal-question jurisdiction. Plaintiffs' right to relief turns on resolution of substantial questions of federal law, and—in light of the extraordinary federal involvement in the very issues that are at the heart of this case and the small number of medical devices subject to such extraordinary federal oversight—the exercise of federal-question jurisdiction here will not disrupt the balance between state and federal jurisdiction. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 808 (2005); *Mikluski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007); *see also Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 878 (W.D. Tenn. 2013) (finding federal question jurisdiction because state-law product liability claims regarding PMA medical device required the court "to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA through the premarket approval process"); *H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 677-78 (S.D. Ohio 2014) (similar).

4. Second, this Court also has diversity jurisdiction over Brandy Record's claims. Both Plaintiffs are citizens of Kentucky, and no Bayer Defendant is a citizen of Kentucky. Although Tracey Patterson brings claims against Defendant Dr. James Delmar Dawson, Jr., a

Kentucky citizen, and Ms. Record brings claims against a Kentucky corporation, Defendant Appalachian Regional Healthcare, Inc., these defendants' presence does not destroy diversity. Ms. Record has fraudulently misjoined her claims to those of Ms. Patterson because their claims against Bayer arise from entirely separate occurrences and transactions, and she has fraudulently joined Appalachian Regional because her claims against that non-diverse defendant are barred by the statute of limitations. Thus, if the Court finds that it does not have federal question jurisdiction, it should apply the doctrines of fraudulent misjoinder to sever the two Plaintiffs' claims, apply the doctrine of fraudulent joinder to ignore the citizenship of the nondiverse defendant against whom Ms. Record's claims are time-barred, and find that it has diversity jurisdiction over Ms. Record's claims against Bayer.

5. The Court thus has federal-question jurisdiction and diversity jurisdiction.

## I. THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE MET.

6. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, orders, and other documents filed in the state court action are attached as Exhibit A.

7. Plaintiffs' Complaint was served on Bayer HealthCare LLC and Bayer HealthCare Pharmaceuticals Inc. on February 7, 2017; it was served on Bayer Corporation on February 8, 2017; and it was served on Bayer Essure Inc. on February 13, 2017. Section 1446(b)(1) requires a notice of removal to be filed within 30 days of the service of a complaint upon the defendants. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (30-day time limit for removal runs from date of formal service of the initial complaint). Thirty days from February 7, 2017 is March 9, 2017. Accordingly, this Notice is timely filed.

8. The United States District Court for the Eastern District of Kentucky presides in the locality in which the state court action is now pending. It is therefore a proper forum for removal. *See* 28 U.S.C. §§ 97(a), 1441(a).

3

9. All Defendants consent to removal. *See* 28 U.S.C. §§ 1441(c)(2), 1446(b)(2)(A). *See* Exhibit E.

10. A copy of this Notice of Removal is being served on Plaintiffs, and a copy is being filed with the state court. *See* 28 U.S.C. § 1446(d).

11. If any questions arise about this removal, Bayer respectfully requests the opportunity to present briefing and oral argument in support of removal.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS FEDERAL-QUESTION JURISDICTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1441.

12. This Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

13. Federal-question jurisdiction exists where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)). This "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

14. Thus, federal-question jurisdiction exists where "(1) the state-law claim . . . necessarily raise[s] a disputed federal issue; (2) the federal interest in the issue [is] substantial; and (3) the exercise of jurisdiction [will] not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikluski*, 501 F.3d at 568. These factors are met

here, in the context of a PMA medical device that FDA heavily regulates, as other well-reasoned cases within this Circuit have held. *See Jenkins*, 984 F. Supp. 2d at 878 (finding federal question jurisdiction over state-law product liability claims regarding PMA medical device because claims required court to decide questions of federal law); *Reuter*, 996 F. Supp. 2d at 677-78 (similar); *cf. Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179, 184-85 (E.D.N.Y. 2012) (finding federal-question jurisdiction in product liability drug case where "boundaries of Plaintiffs' claims . . . are established by the FDCA").

15. Here, whether Plaintiffs' claims against the Bayer Defendants are valid turns on whether those Defendants violated federal regulatory requirements.[1] *See* § II.A, *infra*. Moreover, FDA's extensive evaluation of Essure renders the federal interest particularly substantial and warrants the exercise of federal jurisdiction to resolve the overwhelmingly federal issues of law at issue in those claims. *See* Compl. ¶¶ 286-89, 296-99, 638.

**A. Plaintiffs' Right To Relief Depends On The Resolution Of Substantial And Disputed Federal Questions.**

16. Plaintiffs predicate their state-law claims against Bayer on numerous alleged misrepresentations or omissions. For example, Plaintiffs allege that Bayer:

    a. "failed to comply with several of the . . . conditions of their PMA Order and federal regulations governing medical device manufacturer reporting requirements," *id.* ¶ 118;

    b. "failed to comply with several of the . . . conditions of their PMA Order and federal regulations governing medical device manufacturing processes," *id.* ¶ 129;

---

[1] To the extent that the Court lacks supplemental jurisdiction over Plaintiffs' state-law claims against Dr. Dawson or Appalachian Regional Healthcare, Inc., the Court should sever those claims, while retaining jurisdiction over Plaintiffs' claims against Bayer that necessarily raise federal questions. *See* 28 U.S.C. § 1441(c)(2); Wright et al., 14B Fed. Prac. & Proc. Juris. § 3722.3 (4th ed.).

5

  c. provided MDRs regarding device breakage that were "not in compliance with MDR reporting requirements," *id.* ¶ 255;

  d. "purposefully ignored their mandatory federal reporting requirements," *id.* ¶ 291;

  e. "violated federal law, the FDCA, the MDA, and the regulations," *id.* ¶ 499;

  f. failed to "compl[y] with [its] duties to the FDA as described under the FDCA," *id.* ¶ 527;

  g. did not comply "with the FDCA, and the regulations promulgated pursuant to it," *id.* ¶ 727.

  17. To succeed on their state-law claims, Plaintiffs must prove that Bayer failed to provide FDA-mandated warnings or that Bayer's statements conflict with FDA-approved labeling. *See, e.g.*, *Norman v. Bayer Corp.*, No. 3:16-cv-00253, 2016 WL 4007547, at *3-6 (D. Conn. July 26, 2016) (dismissing misrepresentation and failure-to-warn claims as preempted by federal law); *De La Paz*, 159 F. Supp. 3d 1085, 1096-99 (N.D. Cal. 2016) (same). These requirements are at the core of Plaintiffs' claims and Plaintiffs' right to relief "depends on" their resolution. *Mikluski*, 501 F.3d at 565. As part of the Medical Device Amendments, Congress adopted a "general prohibition on non-Federal regulation" of medical devices, H.R. Rep. No. 94-853, at 45 (1976), by expressly preempting "any requirement" imposed by state law relating to the safety or effectiveness of a medical device that "is different from, or in addition to, any requirement applicable . . . to the device" under federal law. 21 U.S.C. § 360k(a). As the Supreme Court held in *Riegel v. Medtronic, Inc.*, premarket approval of a Class III medical device establishes federal requirements applicable to that device, and state-law tort claims impose state-law requirements. 552 U.S. 312, 321-25 (2008). To the extent state-law claims rest on duties "different from, or in addition to" federal requirements, they are expressly preempted. *Id.* at 330. Thus, a "plaintiff must be suing for conduct that violates the FDCA (or else his claim

6

is expressly preempted by § 360k(a))." *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)) (emphasis omitted); *see also Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1342 (10th Cir. 2015) (dismissal of claims required because plaintiff failed to "identif[y] any legally viable federal requirement that might parallel and thus permit her claims"). Accordingly, Plaintiffs cannot succeed on their state-law claims against Bayer unless they show that Bayer violated a federal requirement.

### B. Federal Jurisdiction Will Not Disrupt The Federal-State Balance.

18. The exercise of federal jurisdiction also will not disrupt the balance between federal and state law that Congress has created, but will instead enhance it. This case involves a medical device that was approved by FDA after receiving pre-market approval, the highest level of scrutiny available in the federal regulatory system. Less than 1% of medical devices receive this rigorous federal approval. In addition, Essure and its labeling have been subject to ongoing, intense review by the FDA. Recognizing federal jurisdiction here would thus "portend only a microscopic effect on the federal-state division of labor"—namely, those cases involving a Class III, PMA medical device in which FDA has taken specific steps to address the alleged issues that are the subject of Plaintiffs' Complaint. *Grable*, 545 U.S. at 315. At the same time, federal question jurisdiction will permit a federal court to decide important and necessarily federal issues of law. *See Reuter*, 996 F. Supp. 2d at 680.

19. Accordingly, this Court should exercise federal question jurisdiction, as several sister courts in this Circuit have done in similar circumstances. *See*, *e.g.*, *Jenkins*, 984 F. Supp. 2d at 878; *H.R. ex rel. Reuter*, 996 F. Supp. 2d at 677-78.

### III. ALTERNATIVELY, REMOVAL OF MS. RECORD'S CLAIMS IS PROPER BECAUSE THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

20. This Court also has diversity jurisdiction over Ms. Record's claims. In this civil action, (1) it is facially apparent that the amount in controversy exceeds $75,000, and (2) there is complete diversity of citizenship because Ms. Patterson's and Ms. Record's claims are fraudulently misjoined, and the citizenship of the non-diverse defendant in Ms. Record's claims should be disregarded under the doctrine of fraudulent joinder. *See id.* § 1332

#### A. The Amount-In-Controversy Requirement Is Satisfied.

21. Although Ms. Record does not specifically allege the amount of damages, it is facially apparent that the damages she seeks, including any punitive damages, exceed $75,000. *See* 28 U.S.C. § 1446(c)(2); *see also Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 599 U.S. 77 (2010); *Allstate v. Blankenship*, No. Civ. A 7:05-194-DCR, 2005 WL 2095679, at *6 (E.D. Ky. Aug. 30, 2005) (considering plaintiff's request for punitive damages).

22. Ms. Record (along with Ms. Patterson) alleges that she suffered injuries and complication, including "abdominal pain that was sharp in nature," "muscle spasms," "fatigue," "hair loss," "irregular uterine bleeding," "menorrhagia," and "nausea." Compl. ¶¶ 380, 386-89. She also seeks punitive damages. *Id.* ¶¶ 402, 403.

23. Courts have found the amount in controversy satisfied in similar circumstances, in which plaintiffs have requested unlimited compensatory and punitive damages. *See, e.g.*, *Griffith v. Aleman*, No. 15-1302, 2016 WL 2869794 (W.D. Tenn. May 17, 2016) (amount-in-controversy satisfied where plaintiff sought unlimited damages for past and future physical pain, significant medical expenses, and mental and emotional anguish); *Christner v. Wal-Mart Stores*

*East, L.P.*, No. 10-10762, 2010 WL 2597440 (E.D. Mich. Jun. 24, 2010) (amount-in-controversy satisfied where plaintiffs sought unlimited damages for serious and permanent back injuries, pain and suffering, lost earnings, medical expenses, and loss of consortium); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (complaint alleging various injuries from prescription drug "obviously" met amount-in-controversy requirement).

24. Moreover—although Bayer denies that any relief is warranted—Kentucky courts routinely uphold awards far in excess of $75,000 for actual and punitive damages in personal injury actions, further supporting the conclusion that the jurisdictional minimum requirement is satisfied. *See, e.g.*, *Nissan Motor Co., Ltd. v. Maddox*, 486 S.W.3d 838, 839-40 (Ky. 2016) (affirming compensatory damages award); *St. Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 883 (Ky. 2016) (affirming punitive damages award).

25. Thus, given the nature of her alleged injuries, the scope of damages sought, and the lack of any express limitation on the amount of damages sought, Ms. Record's claims plainly satisfy the jurisdictional amount requirement.

### B. Complete Diversity Of Citizenship Exists.

26. The second requirement of diversity jurisdiction—complete diversity of citizenship—is also satisfied.

27. The Complaint alleges that Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania. Compl. ¶ 60. Actually, Bayer Corporation's principal place of business is in New Jersey. Thus, for diversity purposes, it is a citizen of Indiana and New Jersey. *See* 28 U.S.C. § 1332(c).

28. The Complaint alleges that Defendant Bayer HealthCare LLC is a Delaware corporation with its principal place of business in New Jersey. Comp. ¶ 61. Actually, Bayer

HealthCare LLC is a limited liability company organized under the laws of Delaware, and its citizenship is determined by the citizenship of its nine members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Those members are:

a. Bayer Medical Care Inc., a Delaware corporation, with its principal place of business in Pennsylvania;

b. NippoNex Inc., a Delaware corporation, with its principal place of business in New Jersey;

c. Bayer West Coast Corporation, a Delaware corporation, with its principal place of business in New Jersey;

d. Bayer Essure Inc., a Delaware corporation, with its principal place of business in New Jersey;

e. Bayer Consumer Care Holdings LLC, a limited liability company, the sole common member of which is Bayer East Coast LLC and the sole preferred member of which is Bayer HealthCare US Funding LLC. Bayer East Coast LLC's sole member is Bayer US Holding LP, and Bayer HealthCare US Funding LLC's members are Bayer AG, Bayer Pharma AG, and Bayer World Investments B.V. Bayer US Holding LP is a limited partnership in which Bayer World Investments B.V. is the sole General Partner and Bayer Solution B.V. is the sole limited partner. Bayer Solution B.V. is a private company with limited liability organized under the laws of the Netherlands and is wholly-owned by Bayer World Investments B.V. Bayer World Investments B.V. is a private company with limited liability organized under the laws of the Netherlands and is wholly owned by Bayer AG. Bayer AG and Bayer Pharma AG are German corporations organized under the laws of Germany whose stock is publicly traded in Germany, and their principal places of business are in Germany;

f. Dr. Scholl's LLC, a limited liability company, the sole member of which is Bayer HealthCare US Funding LLC;

g. Coppertone LLC, a limited liability company, the sole member of which is Bayer HealthCare US Funding LLC;

h. MiraLAX LLC, a limited liability company, the sole member of which is Bayer HealthCare US Funding LLC; and

i. Bayer HealthCare US Funding LLC, a limited liability company, whose members are Bayer AG, Bayer Pharma AG, and Bayer World Investments B.V. Bayer AG is a publicly-held German Aktiengesellschaft with its principal place of business in Germany; Bayer Pharma AG is a German Aktiengesellschaft, wholly owned by Bayer AG, with its principal place of

business in Germany; and Bayer World Investments B.V. is a private company with limited liability that is wholly owned by Bayer AG.

Accordingly, Bayer HealthCare LLC is a citizen of Delaware, New Jersey, Pennsylvania, Germany, and the Netherlands.

29. The Complaint alleges that Defendant Bayer Essure Inc. is a Delaware corporation with its headquarters in California. Compl. ¶ 62. In fact, Bayer Essure Inc. is a Delaware corporation with its principal place of business in New Jersey. Accordingly, it is a citizen of Delaware and New Jersey for diversity purposes. *See* 28 U.S.C. § 1332(c).

30. Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 63. Thus, for diversity purposes, it is a citizen of Delaware and New Jersey. *See* 28 U.S.C. § 1332(c).

31. Defendant Appalachian Regional is a Kentucky corporation with its principal place of business in Kentucky. Compl. ¶ 66.

32. Defendant Dr. Dawson is a citizen of Kentucky. *Id.* ¶ 70.

33. Plaintiff Tracey Patterson is a citizen of Kentucky. *Id.* ¶ 58.

34. Plaintiff Brandy Record is a citizen of Kentucky. *Id.* ¶ 59.

35. Although Plaintiffs share Kentucky citizenship with Appalachian Regional and Dr. Dawson, this Court should disregard their citizenship with respect to Ms. Record's claims. First, Ms. Patterson's and Ms. Record's claims are fraudulently misjoined because their claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences. To the contrary, as explained below, they received Essure from their physician more than three years apart and had their own unique experience with it. Thus, the Court should sever these claims and disregard the citizenship of Dr. Dawson, whom only Ms. Patterson asserts claims against. Second, Appalachian Regional is fraudulently joined as a defendant because Ms. Record's

claims against it are plainly barred by the statute of limitations. The Court should therefore also disregard Appalachian Regional's citizenship. The result is that complete diversity exists with respect to Ms. Record's severed claims against Bayer.

### C. Ms. Record's Claims Against Appalachian Regional Are Time-Barred And They Are Therefore Fraudulently Joined.

36. Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Under that doctrine, the citizenship of a non-diverse defendant should be disregarded for the purpose of assessing diversity jurisdiction when the plaintiffs have "no colorable cause of action" against that defendant. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009).

37. The Eastern District of Kentucky has recognized that a non-diverse defendant may be fraudulently joined when the claims against it are plainly barred by an applicable statute of limitations. *See Adams v. Duff*, No. Civ.A. 04-421, 2004 WL 3103778, at *3 (E.D. Ky. Dec. 8, 2004).

38. Here, Ms. Record's claims against Appalachian Regional are plainly barred by the one-year statute of limitations. *See* Ky. Rev. Stat. § 413.140(1). That statute begins to run when a plaintiff knows or reasonably should know both that she has been harmed and the cause of the harm, even if she does not know the harm is actionable. *Vannoy v. Milum*, 171 S.W.3d 745, 750. (Ky. Ct. App. 2005). Ms. Record alleges that she knew her Essure procedures caused her injuries more than a year before they filed this Complaint. She alleges that "[o]n or about October 18, 2013, [she] presented to [a medical facility] with complaints of fatigue and hair loss that started approximately two months prior to this appointment," that she "also experienced irregular uterine bleeding following her Essure implant, with cramping," that "[o]n or about

February 21, 2014, [she] underwent a hysteroscopy, dilation, and curettage and Novasure ablation for menorrhagia and irregular bleeding," and that she "continued to experience headaches, nausea, irregular menstrual cycles, back and abdominal pain." Compl. ¶¶ 386-89. All of these events—any one of which was sufficient to trigger the statute of limitations—occurred more than one year before the Complaint was filed.

39. Because these claims—the only claims she raises against any non-diverse defendant—are plainly barred by the statute of limitations, this Court should find that that non-diverse defendant is fraudulently joined and that its citizenship should be disregarded with respect to Ms. Record's claims. *See Adams*, 2004 WL 3103778, at \*3 (finding non-diverse defendant fraudulently joined where claims barred by statute of limitations); *Collett v. Freid*, No. Civ.A. 03-526, 2004 WL 3103776, at \*3-6 (E.D. Ky. July 15, 2004) (same); *Pullin v. Lowe's Home Centers, Inc.*, No. 5:09 CV 740, 2008 WL 3246905, at \*2 (N.D. Ohio Oct. 6, 2009) (same); *The Way Int'l v. Exec. Risk Indem., Inc.*, No. 3:07 CV 294, 2008 WL 906006, at \*2 (S.D. Ohio Mar. 31, 2008) (same); *Constant v. Wyeth*, 352 F. Supp. 2d 847, 854 (W.D. Tenn. 2003) (same).

40. Accordingly, Ms. Record's claims against Appalachian Regional are time-barred and it is fraudulently joined.

**D. Plaintiffs' Claims Are Fraudulently Misjoined.**

41. This Court has held that "just as this Court may find diversity jurisdiction exists where a plaintiff has no possible cause of action against a nondiverse defendant, this Court may also find diversity jurisdiction where diversity is destroyed only through misjoinder of parties." *Asher v. Minnesota Mining & Mfg. Co.*, No. Civ.A. 04 CV 522, 2005 WL 1593941, at \*7 (E.D. Ky. June 30, 2005). *But see Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 599 (E.D. Ky. 2011) (rejecting doctrine of fraudulent misjoinder). Fraudulent misjoinder

applies when "the joined claims are unrelated and have been improperly joined in one action to destroy diversity." *Asher*, 2005 WL 1593941, at *4. "Pursuant to the fraudulent misjoinder doctrine . . . the Court must first determine whether the [p]laintiffs' claims were misjoined before it can determine whether it has subject matter jurisdiction." *Id.* at *7 (emphasis omitted). If there is no "reasonable basis" for joinder, then the doctrine applies. *Id.*

42. Ms. Patterson's claims against Bayer, Appalachian Regional, and Dr. Dawson are entirely unrelated to Ms. Record's claims against Bayer and Appalachian Regional. Ms. Record does not make any allegations against Dr. Dawson.

43. There is no reasonable basis for joinder of Ms. Patterson's claims to Ms. Record's under either Federal Rule of Civil Procedure 20(a) or Kentucky Rule of Civil Procedure 20.01. *See Asher*, 2005 WL 1593941, at *4 ("[T]he Court need not decide whether federal or state joinder rules apply where there is an allegation of misjoinder because the Kentucky and federal rules regarding misjoinder are, in all significant respects, identical."). Both rules permit joinder of claims only if the claims involve a common question of law or fact and the plaintiffs "assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a); Ky. R. Civ. P. 20.01. This Court has recognized that the doctrine of fraudulent misjoinder preserves diversity where, as here, some but not all plaintiffs have plausible claims against the non-diverse defendant. *See Asher*, 2005 WL 1593941, at *8-9.

44. Moreover, the mere fact that both Plaintiffs assert claims with respect to their own experience with Essure does not show that their claims are properly joined to one another. To the contrary, "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a[n allegedly] defective drug or

14

medical device." *Stinnette v. Medtronic Inc.*, No. H-09-03854, 2010 WL 767558, at *2 (S.D. Tex. Mar. 3, 2010) (citing *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 145-46 (S.D.N.Y. 2001) and *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001)); *see, e.g.*, *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331, 2013 WL 3729570, at *3 (E.D.N.Y. May 17, 2013) (allowing removal from state court; case transferred to MDL); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, 2012 WL 1118780, at *4 (D.N.J. Apr. 3, 2012) (rejecting joinder of claims against the manufacturers and seller of the same drug); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-MD-1769, 2006 WL 3929707, at *4 (M.D. Fla. Dec. 22, 2006) ("Because these multiple plaintiff cases do not appear to seek relief arising from the same transaction or occurrence, severance of the individual plaintiffs is proper."), *adopted*, 2007 WL 219989 (M.D. Fla. Jan. 26, 2007); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002) (finding joinder improper based on the "many differences between the unique histories of each plaintiff"); *In re Diet Drugs*, No. Civ.A. 98-0994, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (holding multiple plaintiffs alleging damages in a single case arising from ingestion of diet drugs were "clearly misjoined" under Fed. R. Civ. P. 20(a)); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1995 WL 428683, at *6 (E.D. Pa. July 17, 1995) ("[J]oinder based on the belief that the same occurrence or transaction is satisfied by the fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is . . . not a proper joinder . . . .").

45. Severance is particularly appropriate here in light of the disparate factual and legal issues that pertain to each Plaintiff. Each Plaintiff's claim will be dominated by distinctive factual issues, such as the specific details of each Plaintiff's Essure procedure, each Plaintiff's

15

medical history prior to that procedure, the type and nature of the injuries each Plaintiff allegedly suffered, causation of those injuries, the training and performance of each Plaintiff's physician, each Plaintiff's and her physician's reliance on alleged misrepresentations, and each Plaintiff's and her physician's consideration of the Essure labeling and warnings that existed at the times of each Plaintiff's alleged injuries.

46.     Accordingly, this Court also has diversity jurisdiction over Ms. Record's claims under the doctrine of fraudulent misjoinder.

## CONCLUSION

WHEREFORE, Notice is given that this action is removed from the Perry County Circuit Court for the Commonwealth of Kentucky to the United States District Court for the Eastern District of Kentucky.

DATED:     February 27, 2017            Respectfully submitted,

BOEHL STOPHER & GRAVES, LLP.

*/s/ Darryl Lavery*
Darryl Lavery
400 West Market Street, Suite 2300
Louisville, KY 40202
Tel. (502) 589-5980
Fax (502) 561-9400
dlavery@bsg-law.com

*Attorney for Defendants Bayer Corporation, Bayer HealthCare LLC, Bayer Essure Inc., and Bayer HealthCare Pharmaceuticals Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 27th day of February 2017, a copy of Defendant Bayer HealthCare Pharmaceuticals Inc.'s Notice of Removal was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

| | |
|---|---|
| Gregory J. Bubalo, Esq.<br>Leslie M. Cronen, Esq.<br>Kate A. Dunnington, Esq.<br>BUBALO GOODE SALES & CRONEN PLC<br>9300 Shelbyville Rd. Ste. 210<br>Louisville, KY 40222<br>502-753-1600<br>gbubalo@bubalolaw.com<br>lcronen@bubalolaw.com<br>kdunnington@bubalolaw.com | C. Jessica Pratt<br>RENDIGS, FRY, KIELY, & DENNIS, LLP<br>600 Vine Street, Suite 2650<br>Cincinnati, OH 45202<br>513-381-9200<br>jpratt@rendigs.com<br>COUNSEL FOR DEFENDANT,<br>APPALACHIAN REGIONAL<br>HEALTHCARE, INC. d/b/a HAZARD ARH<br>REGIONAL MEDICAL CENTER |

and

| | |
|---|---|
| Gary C. Johnson, Esq.<br>Rhonda J. Blackburn, Esq.<br>Raabia Wazir, Esq.<br>GARY C. JOHNSON, P.S.C.<br>110 Caroline Avenue<br>P.O. Box 231<br>Pikeville, KY 41502<br>606-437-4002<br>gary@garycjohnson.com<br>rwazir@garycjohnson.com | Dean T. Wellman<br>Nichols Walter Darling Wellman PLLC<br>3120 Wall Street, Suite 210<br>Lexington, KY 40513<br>859-368-8116<br>dwellman@kylitigators.com<br>COUNSEL FOR JAMES DELMAR DAWSON JR., M.D. |

COUNSEL FOR PLAINTIFF

                                        */s/ Darryl S. Lavery*
                                        COUNSEL FOR DEFENDANTS